WILLIAM F. AND DIANE M. FALLIGAN, III, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; DOYLE D. AND SHIRLEY J. PRESCOTT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Falligan v. Commissioner
Docket Nos. 27813-87, 17293-88
United States Tax Court
T.C. Memo 1993-606; 1993 Tax Ct. Memo LEXIS 623; 66 T.C.M. (CCH) 1673; December 21, 1993, Filed *623 For petitioners: Declan J. O'Donnell. For respondent: Patricia Anne Golembiewski. PETERSON
PETERSON
MEMORANDUM OPINION PETERSON, Special Trial Judge: These cases were assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. On April 9, 1993, these cases were consolidated for trial, briefing, and opinion pursuant to Rule 141. Unless otherwise indicated, use of the term "petitioners" in this opinion refers both to petitioners William F. and Diane M. Falligan and petitioners Doyle D. and Shirley J. Prescott. Respondent determined deficiencies in petitioners' Federal income tax and additions to tax and increased interest attributable to the deficiencies as follows: William F. and Diane M. Falligan, Docket No. 27813-87: Additions to Tax and Increased Interest
Sec.
Sec.
6653(a)
Sec.
Sec.
Sec.
Year
Deficiency
6653(a)(1)
(2)
6659
6661
6621(c)
1981
$ 5,580
$ 278.50
[1]
$ 1,671.00
-- To be determined
1982
4,813
240.65
[2]
1,443.90
-- To be determined
1983
5,687
284.35
[3]
1,706.10
$ 1,422
To be determined
1984
6,169
308.45
[4]
1,850.70
1,542
To be determined
*624 Doyle D. and Shirley J. Prescott, Docket No. 17293-88: Additions to Tax and Increased Interest
Sec.
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(a)
6653(a)(1)
6653(a)(2)
6659
6621(c)
1980
$  2,283
$ 114
--
--
$   685
To be determined
1981
3,958
--
$ 198
[1]
1,187
To be determined
1982
9,566
--
478
[2]
2,870
To be determined
1983
9,136
--
457
[3]
2,741
To be determined
1984
10,846
--
542
[4]
3,254
To be determined
1985
3,202
--
160
[5]
961
To be determined
In the stipulation of facts filed May 11, 1993, petitioners conceded that they are liable for the respective determined deficiencies for each of the years in issue. On May 28, 1993, a stipulation of partial settlement was filed in docket No. 27813-87, in which respondent conceded that petitioners William F. and Diane M. Falligan are not liable for the determined additions to tax under section 6653(a)(1) and (2), and increased interest under section *625 6621(c), for the taxable years 1981, 1982, and 1983. Respondent also conceded in docket No. 17293-88, where the petitioners are Doyle D. and Shirley J. Prescott, that she bears the burden of proof with regard to the addition to tax under section 6661 for the taxable years 1982, 1983, and 1984, since the issue was raised by respondent in an amendment to answer. After concessions, the issues for decision are: (1) Whether petitioners in docket No. 27813-87 are liable for the determined additions to tax for negligence under section 6653(a) for their taxable year 1984, and whether petitioners in docket No. 17293-88 are liable for the additions to tax for negligence under section 6653(a) for their taxable years 1980-1985, inclusive; (2) whether petitioners in docket No. 27813-87 are liable for the determined addition to tax under section 6661 for their taxable years 1983 and 1984, and whether petitioners in docket No. 17293-88 are liable for the determined addition to tax under section 6661 for their taxable years 1982, 1983, and 1984; [1] (3) whether petitioners in docket No. 27813-87 are liable for increased interest under section 6621(c) for their taxable year 1984, and whether petitioners *626 in docket No. 17293-88 are liable for increased interest under section 6621(c) for their taxable years 1980-1985, inclusive; and (4) if petitioners in docket No. 17293-88 are liable for the determined additions to tax in issue, whether petitioner Shirley J. Prescott is entitled to relief from such liability under the "innocent spouse" provisions of section 6013(e). Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners resided in the State of Colorado at the time their petitions were filed. In 1983, petitioners Doyle D. and Shirley J. Prescott (Mr. and Mrs. Prescott) invested in the Gold Depository and Loan Co., Inc. (GD&L). GD&L purported to be in the business of promoting and selling marine dry cargo containers, which are cargo containers used to transport dry cargo *627 from port-to-port on ocean traveling vessels. Mr. and Mrs. Prescott invested in GD&L in 1983 by signing a Container Purchase and Lease Agreement (1983 Agreement) with GD&L, whereby they purportedly purchased marine dry cargo shipping containers. Under the 1983 Agreement, Mr. and Mrs. Prescott purportedly purchased twenty-seven 40-foot cargo containers for $ 3,000 each, and twenty-nine 20-foot cargo containers for $ 1,500 each, for a total investment of $ 124,500. Mr. and Mrs. Prescott paid $ 6,225 in cash under the 1983 Agreement, which amount represented 5 percent of the purchase price. The balance of the amount due for the investment purportedly was represented by a note in the amount of $ 118,275. In fact, Mr. and Mrs. Prescott did not sign a note or any other instrument evidencing indebtedness to GD&L or to any other entity for the $ 118,275 balance, and never made any payments of interest or principal towards any such indebtedness. In September 1984, Mrs. Prescott entered into a second agreement (1984 Agreement) to invest in GD&L. The only relevant distinction between the 1983 and 1984 Agreements was the amount invested. Under the 1984 Agreement, Mr. and Mrs. Prescott *628 purportedly purchased sixteen 40-foot cargo containers for $ 4,000 each, and forty-eight 20-foot cargo containers for $ 2,000 each, for a total purported investment of $ 160,000. Mr. and Mrs. Prescott paid $ 8,000 in cash under the 1984 Agreement, which amount represented 5 percent of the purchase price, with the 95 percent balance of the investment purportedly represented by a note in the amount of $ 152,000. However, as with the 1983 Agreement, in fact no such note or any other instrument evidencing indebtedness to GD&L or any other entity for the balance of the total investment existed, and Mr. and Mrs. Prescott never made any payments of interest or principal towards any such indebtedness. Also in September 1984, petitioners William F. and Diane M. Falligan (Mr. and Mrs. Falligan) invested in GD&L. Mr. and Mrs. Falligan invested in GD&L by signing an Agreement identical to the Prescott's 1984 Agreement, except for the amount of the investment. Under the terms of their Agreement, Mr. and Mrs. Falligan purportedly purchased eighteen 40-foot cargo containers for $ 4,000 each, and fifty-four 20-foot cargo containers for $ 2,000 each, for a total purported investment of $ 180,000. *629 Mr. and Mrs. Falligan paid $ 9,000 under their Agreement, which amount represented 5 percent of the purchase price. The balance of the amount due for the investment purportedly was represented by a note in the amount $ 171,000. In fact, no such note or any other form of indebtedness existed, and Mr. and Mrs. Falligan never made any payments of interest or principal towards any such indebtedness. Under their Agreements, petitioners authorized GD&L to serve as their nonexclusive agent for a period of 35 months, for the purpose of leasing their purportedly purchased cargo containers for use on ships travelling to and from various United States ports. As compensation for this service, petitioners agreed that GD&L was to receive an annual lease management fee in the amount of 15 percent of the income generated through the leasing of the cargo containers. On December 31, 1983, GD&L issued to Mr. and Mrs. Prescott an income and expense sheet showing the amount of rental income purportedly earned from the rental of their cargo containers during 1983. On December 31, 1984, GD&L issued to Mr. and Mrs. Prescott and to Mr. and Mrs. Falligan, respectively, income and expense sheets showing *630 the amount of rental income purportedly earned from the rental of their cargo containers during 1984. However, in fact, the information provided on each of these income and expense sheets was fictitious, and in fact, neither GD&L nor any GD&L agent or representative ever purchased or contracted to purchase any marine dry cargo containers for subsequent sale to petitioners, or leased any such containers for petitioners or on their behalf. Prior to investing in the GD&L cargo container program, petitioners had no experience in the marine dry cargo container industry. Moreover, prior to investing in GD&L, petitioners consulted no industry experts, read no industry publications, nor otherwise researched the marine dry cargo container industry. In fact, in deciding to invest in GD&L during the years in issue, petitioners relied almost exclusively on the opinions of petitioners' tax return preparer, and on a tax accountant and friend of the tax return preparer. Neither individual had any experience working in the marine dry cargo container industry. On their joint income tax returns filed for the taxable years 1983 and 1984, Mr. and Mrs. Prescott reported the income tax consequences *631 of their GD&L investments, including claimed deductions for depreciation and other expenses and claimed investment tax credits in the respective amounts of $ 12,450 and $ 16,000. Mr. and Mrs. Prescott applied a portion of the credits to taxes owing for the taxable years 1983 and 1984, carried back portions to earlier years, and carried forward a portion to the taxable year 1985. In the notice of deficiency issued to Mr. and Mrs. Prescott for the years in issue, respondent disallowed the claimed Schedule C deductions and claimed investment tax credits in their entirety. On their joint income tax return for the taxable year 1984, Mr. and Mrs. Falligan reported the income tax consequences of their GD&L investment, including a claimed deduction for depreciation and other expenses, and a claimed investment tax credit in the amount of $ 18,000. Mr. and Mrs. Falligan applied a portion of the claimed credit to taxes owing for the taxable year 1984, and carried back portions to the taxable years 1983, 1982, and 1981. In the notice of deficiency issued to Mr. and Mrs. Falligan for the years in issue, respondent disallowed the claimed Schedule C deductions and claimed investment tax credits *632 in their entirety. We first address whether petitioners are liable for additions to tax for negligence under section 6653(a). For the taxable year 1980, section 6653(a) imposes an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. For the remainder of the years in issue, section 6653(a)(1) imposes this same addition to tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations, and section 6653(a)(2) imposes a further addition to tax in the amount of 50 percent of the interest due on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations. Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . Respondent's determination of negligence is presumed to be correct, and petitioners bear the burden of proving that the determination is erroneous. Rule 142(a); . *633 Based on the record, we conclude that petitioners fail to satisfy their burden of proof, and accordingly we hold that they are liable for the determined additions to tax for negligence. In reaching this conclusion we reject petitioners' argument that they invested in GD&L based upon a good faith belief that the cargo container program was a bona fide investment in which they could earn current income either to pay for their children's college expenses or to have for retirement, and not just a means of obtaining tax benefits. We reject petitioners' position because the record clearly shows that the individuals who they claim bolstered their confidence regarding the potential income earning success of a GD&L investment and who enticed them to invest, in fact knew nothing about the cargo container industry and only investigated the GD&L deal to ascertain the tax benefits GD&L investors could expect to reap. It is true that their tax return preparer twice flew to California to try to determine whether GD&L was engaged in a legitimate business, but her investigations occurred only after petitioners had already made their GD&L investments. It is clear that neither the tax return preparer *634 or the tax accountant engaged in any meaningful investigation into GD&L for petitioners beyond summarizing for them the investment's promotional materials which emphasized tax benefits, and in view of petitioners' tax return preparer and tax accountant's lack of knowledge and experience in the cargo container industry, we conclude that it was not reasonable for petitioners to rely so heavily on their "advisers'" opinions as authority on the business prospects of the GD&L investment program. ; see . We conclude that due to their own lack of knowledge regarding the workings of the cargo container industry in general and of GD&L in particular, petitioners had a duty to make a meaningful investigation to ascertain the bona fide business prospects of investing in GD&L. In the absence of such evidence in the record, we hold that respondent's determination of additions to tax under section 6653(a) must be sustained. We next address whether petitioners are liable for additions *635 to tax under section 6661. Section 6661 imposes an addition to tax equal to 25 percent of any underpayment of income tax attributable to a substantial understatement. An understatement is defined as the excess of the amount of tax required to be shown on the tax return over the amount of tax actually shown on the tax return as filed, minus any rebates. Sec. 6661(b)(2)(A). A substantial understatement is one that exceeds the greater of either 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1). The amount of the understatement may be reduced by an amount for which there was substantial authority for the treatment adopted by the taxpayers on their return. Sec. 6661(b)(2)(B)(i). However, such reduction is not available in the case of tax shelters unless the taxpayer reasonably believed that the claimed tax treatment was "more likely than not" the proper tax treatment. Sec. 6661(b)(2)(C)(i)(II). For this purpose, section 6621(b)(2)(C)(ii) defines a tax shelter as any partnership or other arrangement whose principal purpose is the avoidance or evasion of Federal income tax. On the basis of the stipulation of facts and attached exhibits, and the *636 remainder of the record in this case, we conclude that the GD&L marine cargo container investment program was a tax shelter. This conclusion is consistent with other cases in this Court that also have examined GD&L transactions, and petitioners, in fact, concede as much in this case. See, e.g., ; . However, while conceding that the GD&L investments entered into were shams and that the cargo containers never existed, petitioners have not set forth any specific facts from which we could conclude that they reasonably believed that the tax treatment claimed on their returns regarding their GD&L investments was more likely than not the proper tax treatment. In contrast, respondent has shown that petitioners were not knowledgeable about the container leasing industry prior to investing in GD&L, that petitioners did not make any independent effort to investigate the activity prior to investing, and that, in fact, petitioners' "advisers" also failed to engage in sufficient factual and legal analysis to enable petitioners to reasonably believe that *637 the tax treatment they claimed regarding their GD&L investments was "more likely than not proper". On this record, we sustain respondent's determinations of additions to tax under section 6661(a) for the years 1983 and 1984, in docket No. 27813-87 and for the years 1982, 1983, and 1984 in docket No. 17293-88. ; Next, we address whether petitioners are liable for increased interest under section 6621(c). Section 6621(c) provides for an interest rate of 120 percent of the adjusted rate established under section 6601 if there is a "substantial underpayment" (an underpayment exceeding $ 1,000) in any taxable year attributable to one or more "tax motivated transactions". The increased interest rate applies to interest accrued after December 31, 1984, even though the transaction was entered into prior to that date. , affd. without published opinion . Since we have concluded on this record that the GD&L marine cargo *638 container investment program was merely a sham, we hold that section 6621(c) is applicable, and respondent is sustained on this issue. Sec. 6621(c)(3)(A)(v). Finally, having sustained respondent's determinations of the various additions to tax in issue, [2] we address whether petitioner Shirley J. Prescott is entitled to relief from liability for these additions to tax under the provisions of section 6013(e). In general section 6013(e) provides relief from liability for any tax, penalties, additions to tax, interest, or other amounts due on a jointly filed return in the case of an "innocent spouse". To qualify for relief as an innocent spouse, a taxpayer must satisfy four statutory requirements, including a showing that when signing the joint return she did not know, and had no reason to know, of a substantial understatement of tax on the return. Sec. 6013(e)(1)(C). *639 This is a factual matter, and in order to prevail, the spouse seeking relief must show that she possessed a lack of knowledge and reason to know of the transaction from which the substantial understatement stemmed, and not simply a lack of knowledge about the tax consequences resulting from the transaction. , affd. ; . Based on the record in this case, we conclude that Mrs. Prescott is not entitled to relief as an innocent spouse. It is clear in this case that not only did Mrs. Prescott directly engage in conversations with Mr. Prescott and their tax return preparer regarding making GD&L investments, she in fact signed their 1984 Agreement and tendered a check to GD&L to complete their second GD&L investment. Given Mrs. Prescott's involvement with her and her husband's decision to invest in GD&L, we hold that she fails to qualify as an innocent spouse under section 6013(e)(1)(C). To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. 50 percent of the interest on $ 5,580.↩
2. 50 percent of the interest on $ 4,813.↩
3. 50 percent of the interest on $ 5,687.↩
4. 50 percent of the interest on $ 6,169.↩
1. 50 percent of the interest on $ 3,958.↩
2. 50 percent of the interest on $ 9,566.↩
3. 50 percent of the interest on $ 9,136.↩
4. 50 percent of the interest on $ 10,846.↩
5. 50 percent of the interest on $ 3,202.↩
1. Under the facts of these cases, respondent concedes the determined additions to tax under section 6659 in both dockets, for all years in issue.↩
2. At this time we note that in sustaining respondent's determinations of the various additions to tax, we reject petitioners' argument that none of the additions to tax are applicable in this case because of the application of certain securities laws. Petitioners present a confusing argument, the gist of which seems to be that respondent should be estopped from arguing that petitioners did not adequately consider the business merits of investing in GD&L because under relevant securities law petitioners had no duty to engage in such consideration since GD&L failed to properly register its investment offerings as securities. There is no evidence in the record to support petitioners' argument, nor do petitioners cite to any in-point law supporting their conclusions.↩